IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Jeffry Bird,

          Plaintiff,

v.

          Case No. 1:22-cv-2630-MLB

Wade Elmore and City of College
Park, Georgia,

          Defendants.

_____/

**OPINION & ORDER**

Plaintiff is a firefighter for Defendant College Park. (Dkt. 1-1 ¶ 7.) He recently applied for a promotion. (*Id.* ¶ 16.) Defendant Wade Elmore (College Park Fire Chief) denied his application. (*Id.*) Plaintiff filed this lawsuit as a result. He claims Defendant Elmore denied his application because Plaintiff testified in a prior lawsuit—a whistleblower case brought by another firefighter—against Defendant College Park ("Whistleblower Case"). Plaintiff says this constitutes unlawful retaliation under the First Amendment (Count 1) and the Georgia

Whistleblower Act (Count 2). Defendants now move to dismiss Plaintiff's complaint. (Dkt. 4.) The Court grants Defendants' motion.

## I.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.  First Amendment Retaliation (Count 1)

Count 1 asserts an employment retaliation claim under the Free Speech Clause of the First Amendment. To prevail on this claim, Plaintiff must show "(1) he engaged in speech on a matter of public concern, (2) his First Amendment interest in the speech outweighed his employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees, and (3) his speech played a

substantial part in an adverse employment action taken against him." *Bosarge v. Mobile Area Water & Sewer Serv.*, 2022 WL 203020, at *10 (11th Cir. Jan. 24, 2022); *see O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1051 (11th Cir. 2022). Defendants say all three elements are missing here. The Court agrees.

### A. Public Concern

Under the first element, an employee must show the speech for which he allegedly suffered retaliation involved "a matter of public concern." *Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1162 (11th Cir. 2015). Speech involves a matter of public concern when it addresses "any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest." *United States v. Fleury*, 20 F.4th 1353, 1364 (11th Cir. 2021). "The inquiry turns on the content, form, and context of a given statement, as revealed by the whole record." *Alves*, 804 F.3d at 1162. "[C]ontent . . . is undoubtedly the most important factor." *O'Laughlin*, 30 F.4th at 1051. Thus, an employee cannot prevail without meaningfully describing the content of the speech for which he claims he suffered retaliation. *See id.*

Plaintiff has not done that here. He claims Defendants denied his promotion request in retaliation for his testimony in the Whistleblower Case. But Plaintiff's only allegations about the content of that testimony are deficient. All he says is: (1) "Mr. Bird's testimony concerned matters he learned during his employment"; and (2) "Mr. Bird's testimony disclosed and contributed to disclosing violations of law by Fire Chief Elmore and the City, including, among others, violation of the Whistleblower Act." (Dkt. 1-1 ¶¶ 13–14.) The first allegation is insufficient because not everything that happens during public employment is of interest to the community. *See Connick v. Myers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark . . . would plant the seed of a constitutional case."); *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621 (11th Cir. 2015) (speech not protected where plaintiff "only described its content in the most general terms"). And the second allegation is conclusory, meaning the Court cannot consider it. *See Garcia v. Madison Cnty. Alabama Sheriff's Off.*, 2021 WL 3238813, at *4 n.4 (11th Cir. July 30, 2021) ("[T]he district court must . . . disregard conclusory allegations."). Nothing else in the

complaint spells out the content of Plaintiff's speech. So Plaintiff has not plausibly pled the first element of his First Amendment claim.[1]

### B. The Parties' Interests

Count 1 also fails because Plaintiff has not shown his free speech interest outweighed Defendants' interest in taking employment action against him. "[G]overnment employers . . . have legitimate interests in the effective and efficient fulfillment of their responsibilities to the public." *Lane*, 573 U.S. at 242. Sometimes an employee harms—or foreseeably could harm—those interests by speaking out on a matter of public concern. When that happens, the government can penalize the employee if its interest in doing so outweighs the employee's interest in making the speech.

In weighing the parties' interests, the Court must consider "[t]he manner, time, and place of the challenged speech and the context in which it arose." *Moss*, 782 F.3d at 621. Other pertinent considerations

---

[1] Plaintiff insists his testimony is protected speech under *Lane v. Franks*, 573 U.S. 228 (2014). *Lane* found a public employee's litigation testimony was protected speech. But it did so only after considering the content of the employee's testimony. *Id.* at 232–33, 241. We cannot do that here because Plaintiff has not described the content of his testimony in any meaningful way.

are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1346 (11th Cir. 2013).

The complaint does not plausibly plead these factors weigh in Plaintiff's favor because it does not tell us what Plaintiff said during the litigation testimony for which he claims he suffered retaliation. Nor does the complaint say anything about the impact of Plaintiff's testimony on Defendants' operations. Absent this information, the Court cannot meaningfully assess Defendants' interest in regulating the speech. Nor can it weigh that interest against Plaintiff's interest in making the speech. The Court is particularly reluctant to overlook the gaps in Plaintiff's complaint because Defendants have "a heightened need for order, loyalty, and harmony" in the fire department—a "quasi-military organization"—where Plaintiff works. *Moss*, 782 F.3d at 621; *see Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001) (fire departments have a special need to "secure discipline, mutual

respect, trust and particular efficiency"). Defendants' heightened interest requires a correspondingly heightened showing from Plaintiff to defeat that interest.

Plaintiff cites *Lane* for the proposition that Defendants had no legitimate interest in denying his promotion application based on his litigation testimony. (Dkt. 6 at 14.) But, in *Lane*, the Supreme Court said a government employer could have an "adequate justification for treating [an] employee differently" where the employee gives "false or erroneous" litigation testimony, "unnecessarily disclose[s] any sensitive, confidential, or privileged information while testifying," or admits to "wrongdoing . . . while testifying." *Lane v. Franks*, 573 U.S. at 242 & n.5. In other words, *Lane* recognizes the balance of interests can favor a government employer depending on what the employee actually says during his testimony. The Eleventh Circuit recognizes this as well. *See Hansen v. Soldenwagner*, 19 F.3d 573, 576–78 (11th Cir. 1994) (balancing test could favor employer where litigation testimony included "inappropriate speech" such as personal attacks and non-responsive testimony); *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1290 (11th Cir. 2000) ("balance readily would favor the government[]" if employee made

inappropriate statements during a Georgia Bureau of Investigation interview). Here, we do not know what Plaintiff said during his testimony. So we cannot weigh the interests involved. That is fatal to Count 1.

## C. Causation

Even if Plaintiff's speech involved a matter of public concern and his interests outweighed Defendants', Count 1 would still fail because Plaintiff has not shown his speech was "a substantial motivating factor" in Defendants' failure to promote him. *Moss*, 782 F.3d at 618. Plaintiff's burden to make this showing is "not a heavy one." *Walker v. Schwalbe*, 112 F.3d 1127, 1131 (11th Cir. 1997). But he must plead enough facts to plausibly establish the requisite causal link. Relevant factors include:

> (1) the temporal proximity between the [adverse employment decision] and the protected activity; (2) whether any reasons for the [decision] were pretextual; (3) whether any comments made, or actions taken, by the employer indicate the [decision] was related to the protected speech; (4) whether the asserted reason for the [decision] varied; and (5) any circumstantial evidence of causation, including such facts as who initiated [the decision], whether there is evidence of management hostility to the speech in question, or whether the employer had a motive to retaliate.

*Kamensky v. Dean*, 148 F. Appx 878, 881 (11th Cir. 2005). "There is no one factor that is outcome determinative, but all factors must be taken into account." *Id.*

To establish causation on the facts here, Plaintiff must show his litigation testimony played a substantial role in Defendants' failure to promote him from sergeant to lieutenant. He has not done that. He alleges he was "qualified" for the promotion, he "frequently fills in and performs the job functions of a lieutenant when manpower dictates," and Defendants promoted "[a]ll of the [other] sergeants" who applied (except one). (Dkt. 1-1 ¶ 16.) But the probative value of these allegations is limited because Plaintiff does not say how many sergeants actually applied for promotion, how their qualifications compared to his, or whether they also testified in the Whistleblower Case (or engaged in other similar speech).² The mere fact that Plaintiff was qualified and Defendants promoted someone else does not suggest anything nefarious, much less an improper motive tied specifically to Plaintiff's testimony.

---

² It is certainly conceivable that other sergeants testified in the Whistleblower Case. "[A]nother College Park firefighter" filed the lawsuit, alleging "sexual harassment in the fire department" and "illegal conduct by Fire Chief Elmore." (Dkt. 1-1 ¶ 11.)

9

*See Turner v. Tunica Cnty. Mississippi*, 252 F. App'x 608, 609 (5th Cir. 2007) (failure to reassign employee to another job was not First Amendment retaliation because nothing suggested "such job was given to someone else not clearly more qualified"); *Gainer v. City of Winter Haven, Fla.*, 170 F. Supp. 2d 1225, 1231–32 (M.D. Fla. 2001) (no causal link between employee speech and termination because other employees "made the same statements and were not terminated").

Plaintiff also alleges a jury found Defendant College Park liable in the Whistleblower Case, "[College Park] department heads such as Fire Chief Elmore . . . work together with the human resources director to keep grievances bottled up in the departments[] to the extent possible," Defendant Elmore "retaliat[ed] [against] at least one other person who testified" in the Whistleblower Case, Defendant College Park settled another case "alleging malfeasance by Fire Chief Elmore," and Defendant College Park has a "general policy and practice of . . . retaliat[ing] against anyone who dares shed light on [its] corruption." (Dkt. 1-1 ¶¶ 17, 19–21.) The last three allegations about "malfeasance" and "retaliation" are conclusory, so the Court disregards them. The bottled-up-grievances allegation is also unhelpful because it is vague, unclear, and connected

10

only tenuously (if at all) to the retaliation alleged here. And the whistleblower verdict does not move the needle substantially because we do not know when the underlying wrongdoing took place (it could have been years ago), whether it involved Defendant Elmore (the complaint says Defendant Elmore was only one part of the Whistleblower Case, and it is unclear whether the verdict bore on that part), how pervasive or egregious the wrongdoing was, or how similar it was to the retaliation alleged here.

Other factors are either neutral or weaken the causal link further. Plaintiff alleges no temporal proximity between his testimony and his non-promotion because he does not say when either event occurred. All we know is the Whistleblower Case was filed in March 2019 and Plaintiff filed this lawsuit in May 2022. (Dkt. 1-1 ¶ 11.) That leaves a gap of more than three years, "which arguably defeats causation." *Stanley*, 219 F.3d at 1291–92 (four-year gap, while not dispositive, was "significantly" longer than most retaliation cases). Plaintiff does not say whether Defendants offered any reasons for his non-promotion or what those reasons were. He cites no "comments . . . made, by anyone, indicating [his non-promotion] was related to [his] protected speech." *Kamensky v.*

11

*Dean*, 148 F. App'x 878, 882 (11th Cir. 2005). And, critically, he never describes the content of his speech, making it hard to see a motive to retaliate against him for offering that speech. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11th Cir. 1996) ("Every act of expression is not equally as likely to draw a negative response from an employer as every other; for the link to be made, it must be reasonable to assume that the employer had cause to retaliate."); *see, e.g.*, *Kamensky*, 148 F. App'x at 882 (no causation where employee failed to "provide any evidence [her employer] had a motive to retaliate against her").

Given the totality of the allegations in the complaint, Plaintiff has not shown his testimony substantially motivated Defendants to deny his promotion application. So Count 1 fails.

## D. Conclusion

Plaintiff has not shown the speech for which he claims he suffered retaliation—his testimony in the Whistleblower Case—addressed a matter of public concern. He has not shown his interest in testifying outweighed Defendants' interest in denying his promotion application. And he has not established a causal link between his testimony and his

non-promotion. This means Plaintiff has failed to plead three key elements of his First Amendment claim. The Court dismisses Count 1.

### III. Georgia Whistleblower Act (Count 2)

Count 2 asserts retaliation claims under O.C.G.A. §§ 45-1-4(d)(2)–(3). (Dkt. 1-1 ¶¶ 31–32.) Subsection (d)(2) says—in relevant part—"[n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." O.C.G.A. § 45-1-4(d)(2). Subsection (d)(3) says "[n]o public employer shall retaliate against a public employee for objecting to . . . any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." *Id.* § 45-1-4(d)(3).

Plaintiff says Defendant College Park violated these provisions by denying his promotion application in retaliation for his testimony in the Whistleblower Case. (Dkt. 1-1 ¶¶ 31–32.) This is the same retaliation theory underlying Count 1. And, as Defendants note in their motion, it fails for at least two of the same reasons. (Dkt. 4 at 19–20.) First, Plaintiff does not meaningfully describe his litigation testimony, so he

13

cannot show the testimony "disclos[ed] a violation of . . . law" (as required by Subsection (d)(2)) or "object[ed] to . . . any activity, policy, or practice" (as required by Subsection (d)(3)). Second, Plaintiff has not established a causal connection between his non-promotion and his testimony, meaning the former cannot have been "retaliat[ion] . . . for" the latter (as required by both subsections).

Plaintiff's Subsection (d)(2) claim also fails because he does not allege his testimony disclosed anything to "a supervisor or a government agency." O.C.G.A. § 45-1-4(d)(2). The complaint simply says he testified at a deposition and at trial. (Dkt. 1-1 ¶ 11.) We have no idea who was present for either testimony. And, contrary to Plaintiff's assertion, the court in which he testified does not itself count as a "government agency." *See Hubbard v. United States*, 514 U.S. 695, 699 (1995) ("In ordinary parlance, federal courts are not described as 'departments' or 'agencies' of the Government. . . . [I]t would be strange indeed to refer to a court as an 'agency.'"); O.C.G.A. § 45-1-4 (a)(1) (merely defining "government agency" as a law enforcement agency).

14

Given these pleading deficiencies, the Court grants Defendants' motion and dismisses Count 2.[3]

## IV. Conclusion

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 4) and **DISMISSES** Plaintiff's complaint (Dkt. 1-1) **WITHOUT PREJUDICE**. If Plaintiff believes he can cure the deficiencies identified in this Order—which seems possible based on the representations in his brief—he may file an amended complaint that does so within the next two weeks. Otherwise, the Court will close this case.

**SO ORDERED** this 6th day of January, 2023.



MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[3] Tellingly, Plaintiff admits he drafted his complaint based on the pleading standards applicable in Georgia state court. (Dkt. 6 at 24.) This is significant because "Georgia has not chosen to adopt the heightened pleading requirements imposed on federal plaintiffs in *Iqbal* and *Twombly*." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 n.3 (11th Cir. 2011). Instead, Georgia applies an "easier" standard under which "the elements of most claims can be pled in general terms" and "a plaintiff may plead conclusions." *Kimball v. Better Bus. Bureau of W. Fla.*, 613 F. App'x 821, 823–24 (11th Cir. 2015); *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 846 (11th Cir. 2013).

15